UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMY YORK, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| PLAINTIFF, | § § | |
| v. | § § | No. 4:15-cv-3076 |
| RWDY, INC., BRIAN OWEN, AND MARATHON OIL COMPANY, | § § § § | |
| DEFENDANT. | § | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Tommy York ("York") and Defendants RWDY, Inc. ("RWDY"), Brian Owen ("Owen"), and Marathon Oil Company ("Marathon") (collectively, "Defendants") subject to the approval of the Court.

### I.
### RECITALS

1.      York filed the above-styled collective action lawsuit against Defendants on October 19, 2015 (the "York Lawsuit"). York asserts in the York Lawsuit that Defendants, as joint employers, misclassified him and a putative class of Health, Environmental, and Safety ("HES") Advisors as independent contractors and failed to pay them proper overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2.      On May 13, 2016, the Parties (as defined below) mediated the York Lawsuit before professional mediator Gloria Portela. As a result of the Parties' arms-length negotiations, the Parties agreed to settle the York Lawsuit and executed a Memorandum of Understanding resolving the dispute. The Memorandum of Understanding contemplates the execution of this Agreement and its eventual approval by the Court.

3.      Class Counsel (as defined below) has made a thorough and independent investigation of the facts and law relating to the allegations in the York Lawsuit. In agreeing to the terms of this Agreement, Class Counsel has considered: (a) the facts developed during the litigation and mediation of the York Lawsuit and the law applicable thereto; (b) the facts developed from speaking with York; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendants; and (d) the desirability of consummating this settlement according to the terms of this Agreement. The Class Representative (as defined below) has also concluded that the terms of this settlement are fair, reasonable, and adequate, and that it

is in the best interests of the Eligible Class Members (as defined below) to settle their claims against Defendants pursuant to the terms of this Agreement.

4.      Defendants deny the allegations in the York Lawsuit and deny that they engaged in any wrongdoing or that they have violated any law in any respect, including, but not limited to, the FLSA. Defendants are entering into this Agreement because, among other things, it will eliminate the burden, risk, and expense of further litigation.

5.      Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication by or against Defendants of any fault, wrongdoing, or liability whatsoever, including any concession that certification of a class other than for purposes of this Agreement would be appropriate in the York Lawsuit or in any other lawsuits.

6.      The Parties recognize that Court approval of this Agreement is required to effectuate the settlement and that the Agreement will not become operative until the Court enters a Judgment (as defined below) and the Judgment becomes a Final Judgment (as defined below). In the event the Court does not enter a an Order Approval or a Judgment or the Judgment does not become a Final Judgment, this Agreement (except for those provisions relating to non-admissibility and no admission of liability as set forth above) shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized by any Settling Party for any purpose whatsoever. Further, the negotiation, terms, and entry of this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, and any other applicable analogous rules of evidence.

7.      This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the York Lawsuit, the Released Claims (as defined below), and the Class Representative's Released Claims (as defined below) upon and subject to the terms and conditions set forth herein.

8.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that the claims of the Participating Class Members (as defined below) against Defendants shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims and the Representative Class Member's Released Claims shall be finally and fully compromised, settled, and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions set forth below.

## II.
### DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following terms used in this Agreement shall have the meanings ascribed to them below:

a.      "Administrative Costs" means the amount to be paid by Defendants to the Claims Administrator (as defined below) for the Claims Administrator's costs in connection with

administering the settlement described in this Agreement, including the costs of mailing all Settlement Documents (as defined below).

b. "Claims Administrator" means the third-party claims administration firm that Defendants will retain to administer the settlement described in this Agreement and distribute the Settlement Payments (as defined below).

c. "Class Counsel" means THE LAW FIRM OF JOSH BORSELLINO and its attorneys, who warrant and represent that no other law firms or attorneys are serving in any capacity as Class Counsel.

d. "Class Notice" means the notice entitled "Notice of Settlement" that is attached to this Agreement at Exhibit 1.

e. "Class Period" means three years prior to the date that each Participating Class Member files a notice of consent to join the York Lawsuit.

f. "Class Representative" means Tommy York.

g. "Class Representative's Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law or contract, whether known or unknown, and whether anticipated or unanticipated, arising at any time up to and including the Effective Date for any type of relief, including, without limitation, claims for wages, premium, and other forms of pay, unpaid/unreimbursed costs, penalties (including waiting time penalties), general damages, compensatory damages, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief. The Class Representative's Released Claims include, but are not limited to, the Released FLSA Claims as well as all claims under state and/or federal discrimination statutes, including, without limitation, the United States Constitution; the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act; 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act; the Uniformed Services Employment and Reemployment Rights Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Family and Medical Leave Act, to the extent not prohibited by law; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*; and all of their implementing regulations and interpretive guidelines. The Class Representative's Released Claims are intended to reflect a full and general release of claims, and shall be interpreted as broadly as possible consistent with applicable law.

h. "Completions" is the phase during the construction of an oil and gas well when the well is being completed. Some Eligible Class Members worked at Marathon wellsites during the Completions phase. These Eligible Class Members worked fewer hours than the Eligible Class Members who worked during the Drilling phase of the well.

      i.    "Completions Workweeks" means the total number of weeks that each Eligible Class Member worked during the Completions phase of the well at a Marathon wellsite during the Class Period.

      j.    "Cost and Fee Award" means the award of attorneys' fees and costs that the Court authorizes to be paid to Class Counsel for the services provided to York and the Eligible Class Members. The Cost and Fee Award shall not exceed $100,000.00. The Cost and Fee Award will compensate Class Counsel for all work performed in the York Lawsuit as of the date of this Agreement as well as all of the work remaining to be performed through the Effective Date, including, but not limited to, documenting the Agreement, securing preliminary and final Court approval of the Agreement, and obtaining final dismissal of the York Lawsuit. The Cost and Fee Award shall be paid to Class Counsel from the Maximum Settlement Amount.

      k.    "Court" means the United States District Court for the Southern District of Texas, Houston Division.

      l.    "Database of Eligible Class Members" means the electronic file to be provided by Defendants to the Claims Administrator containing a list of Eligible Class Members, including each individual's name, last known address, personal email address (if known), last four digits of social security number, and number of Weeks Worked during the applicable Class Period. The Database of Eligible Class Members shall also indicate whether each individual identified worked during the Drilling or the Completions phase of the well construction process.

      m.    "Defendants' Counsel" means MORGAN, LEWIS & BOCKIUS LLP and MAUREEN BLACKBURN JENNINGS ATTORNEY AT LAW.

      n.    "Drilling" is the phase during the construction of an oil and gas well when the well is actually being drilled. Some Eligible Class Members worked at Marathon wellsites during the Drilling phase. These Eligible Class Members worked more hours than the Eligible Class Members who worked during the Completions phase of the well.

      o.    "Drilling Workweeks" means two times the total number of weeks that each Eligible Class Member worked during the Drilling phase of the well at a Marathon wellsite during the Class Period.

      p.    "Effective Date" means the date on which the Judgment becomes a Final Judgment.

      q.    "Eligible Class Members" refers to all HES Advisors who worked for RWDY in any capacity at a wellsite or any other location operated by Marathon at any time in the United States from May 13, 2013 through the Preliminary Approval Date.

      r.    "Existing Opt-Ins" means the Class Representative and all other individuals who file a valid notice of consent with the Court in the York Lawsuit prior to the date that the Court issues the Preliminary Approval Order (as defined below).

      s.    "Approval and Fairness Hearing" means a hearing set by the Court to take place at the Court's convenience for the purposes of: (i) determining the fairness, adequacy, and

4

reasonableness of this Agreement; (ii) determining whether this Agreement was entered in good faith; (iii) determining the Cost and Fee Award; (iv) determining the payment of the Service Award (as defined below) to the Class Representative; and (v) addressing any objections to the Agreement.

    t.  "Final Judgment" means the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment. Notwithstanding the foregoing, any proceeding or order, or any appeal or petition for a writ pertaining solely to the Cost and Fee Award or the Service Award shall in no way delay or preclude the Judgment from becoming a Final Judgment.

    u.  "Judgment" means the judgment to be rendered by the Court pursuant to this Agreement.

    v.  "Maximum Settlement Amount" means the maximum amount that Defendants shall pay under the terms of this Agreement in exchange for the release of all Released Claims by the Eligible Class Members, which is the sum of Seven Hundred and Fifty Thousand Dollars and Zero Cents ($750,000.00), excluding Defendants share of FICA and FUTA payroll taxes and all applicable taxes under state law. In no event, shall the Maximum Settlement Amount exceed this sum, plus Defendants' share of FICA and FUTA payroll taxes as determined by the Claims Administrator.

    w.  "Net Settlement Amount" means the Maximum Settlement Amount less the Cost and Fee Award and the Service Award. The Parties acknowledge that all of these amounts are subject to the Court's approval.

    x.  The "Notice Mailing Date" shall be the date on which the Claims Administrator initially mails and/or emails the Settlement Documents to the Eligible Class Members, excluding the Existing Opt-Ins and the Class Representative, all of whom are already Participating Class Members under the Agreement. The Notice Mailing Date shall occur within fifteen (15) business days after the receipt of the Database of Eligible Class Members from Defendants.

    y.  The "Notice Response Deadline" shall be the date sixty (60) calendar days after the Notice Mailing Date.

    z.  "Order of Approval" or shall mean an Order to be entered and filed by the Court granting Approval of the Agreement.

    aa.  "Participating Class Member(s)" means the Class Representative, all Existing Opt-Ins, and all Eligible Class Members who submit a valid and timely Settlement Consent Form.

    bb.  "Parties" means York, RWDY, Owen, and Marathon, collectively.

cc.     "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order.

dd.     "Preliminary Approval Hearing" means the Court hearing to consider the preliminary approval of the terms of this Agreement, including the sending of Class Notice.

ee.     "Approval Order" means the Order of the Court preliminarily approving the terms of this Agreement, substantially in the form attached hereto as Exhibit 2, including class certification, for settlement purposes only.

ff.     "Released Claims" means all claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against Releasees for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief arising under the FLSA with respect to the time that the Participating Class Members performed work for RWDY at a wellsite or any other location operated by Marathon at any time in the United States during the Class Period.

gg.     "Releasees" means RWDY, Owen, and Marathon and each of their current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

hh.     "Service Award" means the payment that the Court authorizes to be paid to York from the Maximum Settlement Amount for his service as the Class Representative in the York Lawsuit. The Service Award to York shall not exceed Twenty Thousand Dollars and Zero Cents ($20,000.00) and shall be paid subject to an IRS form 1099 issued by the Claims Administrator.

ii.     "Settlement Consent Form" means Form A attached to the Class Notice, which an Eligible Class Member must submit in order to become a Participating Class Member and recover a Settlement Payment. Neither the Class Representative nor any other Existing Opt-Ins are required to submit a Settlement Consent Form because these individuals are already considered Participating Class Members under this Agreement.

jj.     "Settlement Documents" mean the Class Notice and the Settlement Consent Form.

kk.     "Settling Parties" means Defendants and the Class Representative, on behalf of himself and all Participating Class Members.

ll.     "Settlement Payment(s)" means the payment that each Participating Class Member shall be entitled to receive pursuant to the terms of this Agreement.

   mm. "Weeks Worked" means the number of weeks a Participating Class Member worked during the Class Period.

   nn. "Workweek Amount" means the figure derived by dividing the Net Settlement Amount by the total number of Drilling Workweeks and Completions Workweeks.

## III.
### THE SETTLEMENT

### 1. Certification of Class for Settlement Purposes Only

   1.1. The Parties stipulate, for settlement purposes only, to the certification by the Court of a class consisting of the Existing Opt-Ins and all Eligible Class Members.

   1.2. If, for any reason, the Court does not approve this Agreement, does not enter the Order of Approval, does not enter a Judgment, the Judgment does not become a Final Judgment, or the Agreement is lawfully terminated for any other reason, the Parties' stipulation to the certification of a class for settlement purposes shall be deemed null and void *ab initio*, and Defendants shall retain the absolute right to dispute the propriety of class certification on all applicable grounds.

### 2. Consideration to Participating Class Members

   2.1. Each Participating Class Member shall receive a Settlement Payment. The Settlement Payment for each Participating Class Member who worked during the Drilling phase of the well shall be determined by multiplying his/her Weeks Worked by two and then multiplying the resulting figure by the Workweek Amount (e.g., (Weeks Worked x 2) x Workweek Amount = Settlement Payment). The Settlement Payment for each Participating Class Member who worked during the Completions phase of the well shall be determined by multiplying his/her Weeks Worked by the Workweek Amount (e.g., Weeks Worked x Workweek Amount = Settlement Payment).

   2.2. The Settlement Payment to each Participating Class Member shall be composed of two separate segments. The first segment shall constitute an amount equal to fifty percent (50%) of the total payment to that Participating Class Member and shall be deemed payment in settlement of claims for alleged unpaid overtime or other wages and shall be subject to appropriate deductions and withholdings for wages by the Claims Administrator. The second segment shall constitute the remaining fifty percent (50%) of the Settlement Payment to that Participating Class Member and shall be deemed payment in settlement of claims for alleged liquidated damages, interest, penalties, and all other non-wage income and will be paid subject to a Form 1099.

   2.3. The Claims Administrator shall issue the Settlement Payments to eligible Participating Class Members and will report each payment to all relevant state and federal government authorities, including the Internal Revenue Service, as detailed below.

### 3. Taxes

3.1. The portion of Each Participating Class Member's Settlement Payment allocated to the settlement of claims for alleged unpaid wages: (a) shall be subject to required withholdings and deductions by the Claims Administrator, which will result in the net amount paid being less than the gross amount; and (b) shall be reported in the year of payment as wage income to the Participating Class Member on a Form W-2 and on such other state or local tax reporting forms as may be required by law. The portion of Each Participating Class Member's Settlement Payment allocated to all other claims, including, without limitation, claims for alleged statutory and civil penalties, liquidated damages, interest, and all other non-wage income: (a) shall not be subject to required withholdings and deductions by the Claims Administrator, which will result in the net amount paid being equal to the gross amount; and (b) shall be reported in the year of payment as non-wage income to the Participating Class Members on a Form 1099 and on such other state or local tax reporting forms as may be required by law. The Claims Administrator shall be responsible for issuing all applicable tax forms to the Participating Class Members. As to the payments reported as alleged non-wage income, the Participating Class Members agree to indemnify and hold harmless Releasees for any taxes due or owing by Participating Class Members on such payments. Other than as set forth above, Defendants will not withhold from the Settlement Payments to each Participating Class Member any deductions, withholdings, or additional payments, including, without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Order of Final Approval by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Participating Class Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants, and no payment made pursuant to this Agreement will be considered as "Compensation" under any pension, savings, retiree or other plan if applicable, or otherwise require any contribution or award under any such plan, or otherwise modify benefits, contributions, or coverage under any other employee benefit plan or program.

3.2. Other than the withholding and reporting requirements set forth above, Participating Class Members shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement. Defendants will be responsible for paying their share of any applicable payroll taxes, and the Parties expressly agree that such payroll taxes are not a part of the Maximum Settlement Amount. Releasees make no representation, and it is understood and agreed that Releasees have made no representation, as to the taxability to any Participating Class Members of any portion of the Settlement Payments, the payment of the Cost and Fee Award, or the payment of the Service Award. The Class Notice will advise each Eligible Class Member to seek his/her own personal tax advice prior to acting in response to the Class Notice, and Defendants, the Class Representative, and Class Counsel agree that each Eligible Class Member will have an adequate opportunity to seek tax advice prior to acting in response to the Class Notice.

4. <u>Court Approval of Class Notice and a Settlement Hearing</u>

4.1. The Class Representative, by and through Class Counsel, shall prepare the motion for approval of this Agreement and provide it to Defendants' Counsel for review and comment prior to filing it with the Court. Through the motion for approval, the Class

Representative shall request that the Court: enter the Approval Order approving the terms of this Agreement; certify a class action for settlement purposes only; and approve the sending of the Class Notice. A decision by the Court not to enter the Approval Order in its entirety, or a decision by the Court to enter the Approval Order with modifications (other than modifications concerning the proposed amount of the Cost and Fee Award or the amount of the Service Award) that any of the Settling Parties determines in their reasonable and good faith judgment to be material, will be discretionary grounds for that Settling Party to terminate this Agreement by providing written notice to the other Settling Parties and the Court within fourteen (14) calendar days of receipt of the Court's decision.

4.2.    If any deadlines related to this Agreement cannot be met, Class Counsel and Defendants' Counsel shall confer in good faith to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event the Settling Parties fail to reach an agreement, any of the Settling Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement, provided that such a request to the Court may seek only reasonable modifications of the dates and deadlines contained in this Agreement and no other changes.

## 5.    Notice to Class Members; Responses to the Notice.

5.1.    Defendants shall provide to the Claims Administrator the Database of Eligible Class Members within ten (10) business days of the Court issuing the Preliminary Approval Order. The Database of Eligible Class Members shall be based on Defendants' invoices and other business records and provided in a format acceptable to the Claims Administrator. Defendants agree to consult with the Claims Administrator prior to the production date to ensure that the format of the list will be acceptable to the Claims Administrator. Upon production of the Database of Eligible Class Members, Defendants will verify that to the best of their knowledge the Database of Eligible Class Members is complete and accurate and provides all of the information required pursuant to this Agreement and any applicable Court orders. The Claims Administrator shall maintain the Database of Eligible Class Members, and all data contained within the Database of Eligible Class Members, as private and confidential and shall not disclose such data to any persons or entities other than Defendants' Counsel. The Claims Administrator may, with the approval of Defendants' Counsel, disclose certain information in the Database of Eligible Class Members to Class Counsel when necessary to carry out the terms of this Agreement, address a disputed claim, or respond to a specific inquiry from an Eligible Class Member. The Eligible Class Member Database is being provided by Defendants solely for purposes of the administration of the settlement set forth in this Agreement and it may not be used by the Claims Administrator or any of the Parties or any third parties for any other purpose. The Claims Administrator shall check with the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Eligible Class Members.

5.2.    Within fifteen (15) business days of receipt of the Database of Eligible Class Members from Defendants, the Claims Administrator shall send via first class mail and email, when possible, the Court-approved Class Notice and related Settlement Documents to each Eligible Class Member (the Notice Mailing Date). Unless the Settling Parties agree otherwise in writing or the Court so orders, each of the Class Notices and related Settlement Documents shall

be mailed to the last known addresses and email addresses, if known, of the Eligible Class Members no later than the Notice Mailing Date.

5.3.    Existing Opt-Ins and the Class Representative shall be deemed Participating Class Members. Existing Opt-Ins and the Class Representative are bound by the Judgment the Released Claims. The Class Representative shall also be bound by the Class Representative's Released Claims.

5.4.    Eligible Class Members may elect to become Participating Class Members. Eligible Class Members who wish to exercise this option and submit a claim for payment under this Agreement must fully and timely complete, execute, and return, per the instructions therein, the form entitled Settlement Consent Form (attached to Exhibit 1 as Form A) within sixty (60) calendar days from the Notice Mailing Date.

5.4.1.    If a valid and properly executed Settlement Consent Form is not received by the Claims Administrator from an Eligible Class Member on or before the Notice Response Deadline, that Eligible Class Member will no longer be eligible to be a Participating Class Member and will have no right to receive payment under this Agreement, unless Defendants decide, in their sole discretion, to accept and resolve the Eligible Class Member's late or disputed claim.

5.4.2.    Only Participating Class Members will be bound by the Released Claims. Consistent with the law, however, the statute of limitations for an FLSA claim shall continue to run until a person affirmatively opts into, or files, an FLSA suit.

5.5.    Beginning fourteen (14) business days after the Notice Mailing Date, the Claims Administrator shall provide to Class Counsel and Defendants' Counsel a weekly status report, which will be cumulative, reflecting the names and the number of Eligible Class Members who have returned any of the following:  completed Settlement Consent Forms, incomplete Settlement Consent Forms; or untimely Settlement Consent Forms. This status report should also identify all Eligible Class Members whose Settlement Documents were returned to the Claims Administrator as undeliverable.

5.6.    In the event that Settlement Documents are returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, prior to the deadline for a response, the Claims Administrator shall re-mail the Settlement Documents to the forwarding address within five (5) calendar days and the Settlement Documents will be deemed mailed as of the date on which they are forwarded.  The forwarding address shall be deemed the updated address for that Eligible Class Member.

5.7.    In the event that Settlement Documents are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Eligible Class Member in question. If such an address is ascertained, the Claims Administrator shall re-send the Settlement Documents within five (5) calendar days of receiving such information.

5.8.     To the extent an Eligible Class Member whose address has not been deemed unknown by the Claims Administrator has not submitted to the Claims Administrator some form of written response to the Settlement Documents by the date that is thirty (30) calendar days before the Notice Response Deadline, the Claims Administrator shall send that Eligible Class Member a reminder postcard that: (a) references the York Lawsuit; (b) states that the Eligible Class Member received a Class Notice regarding the settlement of the York Lawsuit; (c) provides the phone number and address of the Claims Administrator; (d) states the Notice Response Deadline, and (e) states that the Eligible Class Member can contact the Claims Administrator to receive an additional copy of the Settlement Documents.  The postcard shall not contain additional information or statements. Nothing in this paragraph shall be construed to extend the Notice Response Deadline for any Eligible Class Member, and the reasonable costs expended in association with the preparation and mailing of the postcards contemplated by this paragraph, as well as the costs associated with any notices provided under this Agreement, shall be included as part of the Administrative Costs.

5.9.     The Administrative Costs paid to the Claims Administrator by Defendants shall be used to pay for all costs associated with the above-referenced mailings, as well as the cost of the envelopes in which the Settlement Documents will be mailed, any follow-up postcards, cure letters, the cost of reproducing the Settlement Documents, the cost of postage to send the Settlement Documents, and the cost of calculating Settlement Payments and potential tax liabilities.  The Class Representative acknowledges that Defendants' agreement to pay the Administrative Costs constitutes part of the consideration to the Participating Class Members.

5.10.   Nothing in this Agreement is intended to limit Class Counsel from responding to inquiries from Eligible Class Members, or to limit the Claims Administrator from referring such inquires to Class Counsel.

6.     **Funding of the Settlement Proceeds**

6.1.     The Claims Administrator shall establish and administer a Qualified Settlement Fund ("QSF") within the meaning of Section 468B of the Internal Revenue Code, which may be used for the purpose of processing and paying all or any part of the Maximum Settlement Amount hereunder and for the purpose of reporting to federal and state governmental tax authorities.

6.2.     Within ten (10) business days of the Effective Date, Defendants shall wire to the Claims Administrator the Cost and Fee Award, the Service Award, and the balance of the Net Settlement Amount required to compensate the Participating Class Members in accordance with this Agreement. After these payments are made, all unclaimed funds from the Net Settlement Amount shall revert to Defendants.

7.     **Timing of Payment to Participating Class Members**

7.1.     Within fifteen (15) business days of Defendants wiring the payments described in Section 7.2 of this Agreement, the Claims Administrator shall mail the Settlement Payment to each Participating Class Member at his/at his/her last known address, or updated address if obtained.

7.2.    Checks issued to Participating Class Members pursuant to this Agreement shall remain negotiable for a period of one hundred and twenty (120) calendar days from the date of mailing.   The Claims Administrator shall notify Class Counsel on a weekly basis of any Participating Class Member whose Settlement Payment was returned as undeliverable.  Class Counsel will then attempt to obtain updated contact information for each such Participating Class Member and will then provide this information to the Claims Administrator, after which time the Claims Administrator shall reissue the Settlement Payment to the Participating Class Member's updated address within five (5) calendar days. Participating Class Members who fail to timely negotiate their Settlement Payments shall, like all other Participating Class Members, remain subject to the terms of this Agreement.

7.3.    Nothing herein shall be construed to prevent the Claims Administrator or Class Counsel (through the Claims Administrator) from contacting Class Members to inform them of the expiration of their Settlement Payments.

7.4.    The Claims Administrator shall promptly provide Class Counsel and Defendants' Counsel written confirmation of mailing of the Settlement Payments.  Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of the Judgment with the Court on behalf of the Participating Class Members.

8.    <u>Releases</u>

8.1.    Upon the Effective Date, each of the Participating Class Members, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released Claims.

8.2.    Upon the Effective Date, the Class Representative shall also be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Class Representative's Released Claims. Additionally, as a condition of receiving the Service Award, the Class Representative will also execute an individual full and general release agreement consistent with the terms of this Agreement.

8.3.    The above releases are conditional and shall only take effect unconditionally upon the Effective Date.

9.    <u>Payment of Cost and Fee Award and Service Award</u>

9.1.    In advance of the Approval and Fairness Hearing, Class Counsel shall apply to the Court for the Cost and Fee Award not to exceed One Hundred Thousand Dollars and Zero Cents ($100,000.00) and the Service Award not to exceed Twenty Thousand Dollars and Zero Cents ($20,000.00). Both the Cost and Fee Award and the Service Award shall be obtained from the Maximum Settlement Amount.  Defendants will not oppose the Cost and Fee Award or the Service Award, up to the amounts stated herein.  Any Court-approved payments made pursuant to this paragraph shall constitute full satisfaction of any claim for attorneys' fees or costs related to the York Lawsuit or this Agreement. The Class Representative and Class Counsel, on behalf of themselves and all Participating Class Members, agree that they shall neither seek nor be entitled

to any additional attorneys' fees or costs under any theory. The Class Representative and Class Counsel further agree that they shall be responsible for justifying the amounts of the Cost and Fee Award and the Service Award to the Court and shall submit, as appropriate, the necessary materials to justify these payments along with the motion for approval of this Agreement.

9.2.    Because the Service Award represents payment to the Class Representative for service to the Eligible Class Members and consideration for the Class Representatives' Released Claims, taxes will not be withheld from the Service Award. The Claims Administrator will report the Service Award on a Form 1099, and any other required tax forms, and will provide the required forms to the Class Representative and to the pertinent taxing authorities as required by law. The Class Representative assumes full responsibility for paying all federal and state taxes due as a result of receiving the Service Award. The Class Representative further agrees to indemnify and hold harmless Defendants for any taxes found to be due or owing related to the payment of the Service Award.

9.3.    Class Counsel assumes full responsibility for paying all federal and state taxes due as a result of receiving the Cost and Fee Award. Class Counsel further agrees to indemnify and hold harmless Defendants for any taxes found to be due or owing related to the payment of the Cost and Fee Award.

9.4.    Any remaining or un-awarded portion of the Service Award shall revert to Defendants. Any remaining or un-awarded portion of the Cost and Fee Award shall revert to the Net Settlement Amount.

10.    **Claims Administrator**

10.1.    Defendants shall be responsible for paying all reasonable Administrative Costs incurred by the Claims Administrator in administering the terms of this Agreement.

10.2.    In the event that either Class Counsel or Defendants take the position that the Claims Administrator is not acting in accordance with the terms of this Agreement, such party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

11.    **Termination of Settlement**

11.1.    Defendants shall make no payments to anyone under this Agreement in the event that any of the following occurs: (1) the Agreement is not approved in its entirety by the Court, excluding modifications that Defendants determine in their reasonable and good faith judgment to not be material modifications; (2) the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; (3) the Judgment does not become a Final Judgment; or (4) the Effective Date does not occur. In the event of one of the above occurrences, the Settling Parties will each bear their own costs and fees with regard to the efforts to obtain Court approval of the Agreement. Further, in such event, this Agreement, except for those provisions relating to non-admissibility and non-admission of liability, shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and it shall not be used in the York Lawsuit or in any

other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc.

11.2. Moreover, Defendants shall have the absolute discretionary right to terminate this Agreement and the terms set forth in this Agreement in the event that any of the following conditions occur:

11.2.1. In the event that this Agreement is construed in such a fashion that would require Defendants to pay: (i) more than the Maximum Settlement Amount; and/or (ii) any amount(s) not expressly provided for in this Agreement;

11.2.2. In the event that the Court does not certify, for settlement purposes only, a class action or otherwise makes an order materially inconsistent with any of the terms of this Agreement or the Settlement Documents prepared to effectuate the Agreement;

11.2.3. In the event that the Class Representative or Class Counsel breaches this Agreement.

11.3. To the extent Defendants choose to exercise the right to terminate this Agreement, they must do so through written notice to Class Counsel prior to the Final Judgment and within fourteen (14) calendar days of Defendants learning of the occurrence of the operative condition warranting termination.

11.4. Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of the Cost and Fee Award or the Service Award shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provision of the Judgment.

12. **Miscellaneous Provisions**

12.1. The only Eligible Class Members entitled to a Settlement Payment under this Agreement and the associated Judgment are Participating Class Members, and they shall be entitled to their individual Settlement Payment only.

12.2. Defendants' only obligations to Class Counsel and the Claims Administrator are set forth in this Agreement. Class Counsel and the Claims Administrator shall not seek to recover any fees or costs awarded in excess of the terms in this Agreement.

12.3. This Agreement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense. The Settling Parties agree that the amounts paid in connection with this Agreement and the other terms of the settlement were negotiated in good faith by the Settling Parties and reflect an Agreement that was reached voluntarily after consultation with competent legal counsel.

12.4. Releasees specifically and generally deny any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the York Lawsuit and make no concessions or admissions of liability of any sort. Neither this Agreement nor any act

14

performed or document executed pursuant to, or in furtherance of, this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims or the wrongdoing or liability of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

12.5.   All of the exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

12.6.   This Agreement constitutes the entire agreement among the Settling Parties hereto regarding the subject matter discussed herein, and no representations, warranties, or inducements have been made to any party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized herein. Except as otherwise explicitly provided herein, each Settling Party shall bear its own fees and costs.

12.7.   Class Counsel, on behalf of the Eligible Class Members, represents that, after consultation with and approval of the Class Representative, it is expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class Representative pursuant to this Agreement to effect its terms, and also is expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Eligible Class Members that it deems appropriate.  Similarly, Defendants' Counsel represents that they are expressly authorized to take all appropriate action required or permitted to be taken by Defendants pursuant to this Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to this Agreements on behalf of Defendants that they deem appropriate.

12.8.   Each counsel or other person executing this Agreement or any of its exhibits on behalf of any Settling Party hereto hereby warrants that such person has the full authority to do so.

12.9.   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

12.10. Whenever this Agreement requires or contemplates that a Settling Party or the Claims Administrator shall or may give notice to a Settling Party, notice shall be provided by facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

15

(i) If to Defendants, then to:

Nancy L. Patterson
Nancy.Patterson@morganlewis.com
T. Cullen Wallace
Cullen.Wallace@morganlewis.com
Morgan, Lewis, & Bockius LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Facsimile: 713-890-5001

Maureen Blackburn Jennings
Marueen@maureenjenningslaw.com
1135 Heights Blvd.
Houston, Texas 77008
Facsimile: 713-802-9114

(ii) If to Class Representative, then to:

Josh Borsellino
Josh@dfwcounsel.com
The Law Firm of Josh Borsellino
1020 Macon Street, Suite 15
Fort Worth, Texas 76102
Facsimile: 817-394-2412

12.11. This Agreement shall be binding upon and inure to the benefit of the Settling Parties and their respective heirs, trustees, executors, administrators, successors, and assigns; but this Agreement is not designed to and does not create any third party beneficiaries, either express or implied.

12.12. The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

12.13. The Settling Parties agree and understand that there shall be no injunctive relief included as part of any Court Order as to them.

12.14. This Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Texas, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Texas without giving effect to that State's choice of law principles.

12.15. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Settling Party. No Settling Party shall be deemed the drafter of this Agreement. The Settling Parties acknowledge that the terms of this Agreement are contractual and are the product of arms-length negotiations

16

between the Settling Parties and their counsel. Each Settling Party and their counsel cooperated in the drafting and preparation of this Agreement.

12.16. After the Court enters the Approval Order, Class Representative, Class Counsel, and their agents may communicate with Eligible Class Members provided that such communications are accessible only to Eligible Class Members; however, they shall not issue, or cause to be issued, any statements to the press, any other media, or to any third party regarding this settlement or this Agreement, including, but not limited to, communications or statements on web sites or other social media.

12.17. The Class Representative, by Class Counsel signing this Agreement on his behalf, which he has authorized Class Counsel to do, is bound by the terms herein and further agrees not to request to be excluded from the Agreement and not to object to any terms of this Agreement. Any such request for exclusion or objection shall therefore be void and of no force or effect. Counsel for Defendants, Class Counsel, and the Class Representative waive their rights to file an appeal, writ, or any challenge whatsoever to the terms of this Agreement, except that the Class Representative and Class Counsel have the right to appeal any order denying, in whole or in part, an application for the Cost and Fee Award and the Service Award.

12.18. Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Class Representative or the Eligible Class Members, may recover or seek to recover any amounts for attorneys' fees, costs, or other disbursements from the Maximum Settlement Amount or otherwise from the Releasees except as expressly provided herein.

12.19. This Agreement may not be changed, altered, or modified, except in writing signed by the Settling Parties hereto and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Settling Parties hereto.

12.20. Paragraph titles or captions contained in this Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

13.   **Return of All Documents and Other Discovery**

13.1.   No discovery materials shall be disseminated or distributed to any person or entity by the Class Representative or Class Counsel. All originals or reproductions of any discovery materials obtained from Defendants and/or given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and destroyed, and Class Counsel shall certify within thirty (30) calendar days of the Effective Date that they have destroyed all such documents or information and all copies thereof.

14.   **Age Discrimination in Employment and Older Workers' Benefit Protection Act Release.**

ADDITIONALLY, THIS AGREEMENT SPECIFICALLY WAIVES ALL OF YORK'S RIGHTS AND CLAIMS ARISING UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (29 U.S.C. § 621 *et seq.*, AS AMENDED), AND THE OLDER

WORKERS' BENEFIT PROTECTION ACT, AS AMENDED.  IN CONNECTION WITH THIS WAIVER, York acknowledges and agrees to the following:

(a) I am waiving any and all rights or claims under the Age Discrimination in Employment Act in exchange for consideration that is in addition to anything of value to which I already am entitled.

(b) I have had ample opportunity to consult with an attorney prior to executing this Agreement. Defendants advised me and encouraged me in writing herein to consult with an attorney prior to signing this Agreement and Release.

(c) I have carefully read and fully understand all of the provisions and effects of this Agreement and I knowingly and voluntarily (of my own free will) entered into all of the terms set forth in this Agreement.

(d) I knowingly and voluntarily intend to be legally bound by all of the terms set forth in this Agreement.

(e) I relied solely and completely upon my own judgment and/or the advice of my attorney in entering into this Agreement.

(f) I further understand that I have been given at least twenty-one (21) days to consider the terms of this Agreement before signing it. The parties agree, however, that any changes to the terms or conditions of this Agreement (whether material or immaterial) will not restart the running of the twenty-one (21) day period.

(g) If I sign this Agreement prior to the end of the twenty-one (21) day time period, I certify that, in accordance with 29 CFR § 1625.22(e)(6), I knowingly and voluntarily decided to sign the Agreement after considering it less than twenty-one (21) days and my decision to do so was not induced by the Released Parties through fraud, misrepresentation, or a threat to withdraw or alter the offer prior to the expiration of the twenty-one (21) day time period. I have not been asked by the Released Parties to shorten my time period for consideration of whether to sign this Agreement. If I decide to sign this Agreement prior to the end of the twenty-one (21) day time period, the Released Parties may expedite the processing of benefits provided to me in exchange for signing this Agreement, subject to sections (h) and (i) below.

(h) I understand that I may change my mind and revoke this Agreement at any time within seven days after I sign it by sending notice of revocation to the attention of Nancy L. Patterson by fax **and** certified mail, return receipt requested, to Morgan, Lewis, & Bockius, 1000 Louisiana Street, Suite 4000, Houston, Texas 77002, facsimile: (713) 890-5001 and to Marueen Blackburn Jennings, 1135 Heights Blvd. Houston, Texas 77008, facsimile: (713) 802-9114. I understand that this Agreement and Release shall not become effective or enforceable until after the seven (7) day revocation period has expired and that I will receive no benefits until

seven (7) day revocation period has expired and that I will receive no benefits until the eighth (8th) day after I sign this Agreement and Release at the earliest, assuming I have not revoked this Agreement and Release.

(i)     I understand that following the seven (7) day revocation period, this Agreement and Release will be final and binding.  I promise that I will not pursue any claim that I have settled by this Agreement and Release.  If I break this promise, I agree to pay all of the Released Parties' costs and expenses (including reasonable attorney's fees) related to the defense of any claims, except this promise not to sue does not apply to claims that I may have under the Older Workers' Benefit Protection Act and the Age Discrimination in Employment Act.  Although I am releasing claims that I may have under the Older Workers' Benefit Protection Act and the Age Discrimination in Employment Act, I understand that I may challenge the knowing and voluntary nature of this Agreement and Release under the Older Workers' Benefit Protection Act and the Age Discrimination in Employment Act before a court, the EEOC, the NLRB, or any other federal, state, or local agency charged with the enforcement of any employment laws.  I understand, however, that if I pursue a claim against the Released Parties under the Older Workers' Benefit Protection Act and/or the Age Discrimination in Employment Act, a court has the discretion to determine whether the Released Parties are entitled to restitution, recoupment, or set off (hereinafter "reduction") against a monetary award obtained by me in the court proceedings.  A reduction never can exceed the amount I recover, or the consideration I received for signing this Agreement and Release, whichever is less.  I also recognize that the Released Parties may be entitled to recover costs and attorneys' fees incurred by them as specifically authorized under applicable law.

(j)     I am, through this Agreement and Release, releasing the Released Parties from any and all claims I may have against the Released Parties, relating to my employment and separation, including claims arising under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 6721, *et seq.*).  My initials below, following the present paragraph of this Agreement and Release, evidence my understanding and voluntary waiver of all claims against the Released Parties, including, but not limited to, those pursuant to the Age Discrimination in Employment Act, the Texas Labor Code, and the Older Workers' Benefit Protection Act.

Initials: _____

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Agreement as follows:

PLAINTIFF: _____     Date: 8-26_____, 2016

CLASS
COUNSEL:

_Josh Borsellino_
Josh Borsellino
State Bar No. 24045532
The Law Firm of Josh Borsellino
1020 Macon Street, Suite 15
Fort Worth, Texas 76102
817-908-9861 – Telephone
817-394-2412 – Facsimile

Date: _8–26-16_, 2016

DEFENDANT:

_Brian T. Owen_
RWDY, Inc.

Date: _August 31_, 2016

DEFENDANT:

_Brian T. Owen_
Brian Owen

Date: _August 31_, 2016

COUNSEL FOR
BRIAN OWEN
AND RWDY, INC:

_Maureen Jennings_
Maureen Blackburn Jennings
State Bar No. 02385280
1135 Heights Blvd.
Houston, Texas 77008
713-209-2930 – Telephone
713-802-9114 – Facsimile

Date: _August 31_, 2016

DEFENDANT:

_____
Marathon Oil Company

Date: _____, 2016

20

Tommy York

**CLASS
COUNSEL:**    _____    Date: _____, 2016
Josh Borsellino
State Bar No. 24045532
The Law Firm of Josh Borsellino
1020 Macon Street, Suite 15
Fort Worth, Texas 76102
817-908-9861 – Telephone
817-394-2412 – Facsimile


**DEFENDANT:**    _____    Date: _____, 2016
RWDY, Inc.


**DEFENDANT:**    _____    Date: _____, 2016
Brian Owen


**COUNSEL FOR
BRIAN OWEN
AND RWDY, INC:**    _____    Date: _____, 2016
Maureen Blackburn Jennings
State Bar No. 02385280
Three Riverway #1800
Houston, Texas 77056
713-209-2930 – Telephone
713-659-5302 – Facsimile


**DEFENDANT:**    _____    Date: August 25, 2016
Marathon Oil Company



20

COUNSEL FOR
MARATHON OIL
COMPANY:

Date: 9/1_____, 2016

Nancy L. Patterson
State Bar No. 15603520
Morgan, Lewis & Bockius, LLP
1000 Louisiana St., Suite 4000
Houston, Texas 77002
713-890-5000 – Telephone
713-890-5001 – Facsimile

21